UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CALVIN DUDLEY THOMAS,

      Petitioner,

v.                                    Case No.  3:14cv501/LC/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent filed an answer, submitting relevant portions of the state court record. (Docs. 15, 16). Petitioner did not reply, although invited to do so. (Doc. 17). Petitioner's reply deadline expired on September 14, 2015. (Doc. 33). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court

show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On September 11, 2009, petitioner was charged in Escambia County Circuit Court Case Number 09-CF-4011, with two counts of unlawfully selling or delivering a controlled substance within 1,000 of a place of worship or a convenience business. (Doc. 16, Ex. A, p. 1).[1]  One count involved crack cocaine and was a first degree felony, and the other count involved marijuana and was a second degree felony. (*Id.*).  On September 23, 2009, the State filed a notice of intent to seek enhanced sentencing under Florida's Habitual Felony Offender (HFO) statute, Fla. Stat. § 775.084.  (Ex. A, p. 11).  Petitioner's maximum possible sentence was 45 years in prison if sentenced under the guidelines, and 90 years in prison if sentenced as an HFO.  (Ex. A, pp. 12-15, 17-18, 23, 28-29).

On January 7, 2010, petitioner executed a counseled, negotiated written plea agreement (titled "Sentence Recommendation") wherein he entered a straight-up plea of no contest as charged and stipulated that he was a habitual felony offender, in exchange for the State agreeing to a sentence cap of 15 years state prison.  (Ex.

---

[1] All references to exhibits are to those provided at Doc. 16.  References to page numbers of exhibits are to those appearing on the bottom center of the page.

A, pp. 23-26).  As a factual basis for petitioner's plea, the plea agreement provided: "On 6/9/09, the Defendant sold crack cocaine and marijuana to an undercover narcotics officer with the Escambia County Sheriff's Department.  The transaction took place within 1,000 feet of Six Brothers Food Market." (*Id.*, p. 23).  Petitioner certified in the written plea agreement that he had read the information and understood the charges set forth therein, including the maximum possible penalties; that he understood the constitutional rights he was giving up by entering his plea and voluntarily chose to waive them; that he discussed with his attorney all of the consequences of entering his plea and was satisfied with his attorney's advice and services; that his attorney had not compelled or induced him to enter into the plea agreement; that he had reviewed the facts of his case with his attorney and agreed and stipulated there were sufficient facts available to the State to justify his plea; that he had never been declared legally incompetent or insane; that he was entering the agreement voluntarily of his own accord and with full understanding of all matters set forth in the information and in the plea agreement; that he understood the State was seeking an enhanced sentence; and that his attorney had reviewed discovery disclosed by the State.  (*Id.*, pp. 23-26).

At the plea hearing, the trial court conducted an extensive inquiry of petitioner's understanding of the nature of the charges and the consequences of his

plea, and of his opportunity to discuss his case with defense counsel.  Petitioner affirmed under oath that he understood the charges, the maximum possible sentence and the terms of the plea agreement; and that he had enough time to go over the plea agreement with counsel and understood everything it said.  (Ex. A, pp. 16-21). Based on petitioner's responses, the court accepted petitioner's plea and ordered a presentence investigation.  (*Id.* p. 21).

At the sentencing hearing held February 17, 2010, the court received the PSI report and the State's evidence of petitioner's prior felony convictions.  (*Id.*, p. 28 (sentencing hearing transcript), pp. 45-74 (State's documentary evidence of petitioner's qualification as an HFO)).  The trial court found that petitioner had stipulated to sentencing as an HFO and that the State's evidence of petitioner's prior felony convictions established that he met the criteria for sentencing as an HFO. (*Id.*, pp. 28-29).  After allowing petitioner, his mother and his pastor to be heard, the trial court adjudicated petitioner guilty of both counts as charged in the information, and sentenced him as an HFO to concurrent terms of 15 years imprisonment on each count.  (*Id.*, pp. 27-43).  Judgment was rendered February 17, 2010.  (*Id.*, pp. 75-76). Petitioner initiated a direct appeal.  (*Id.*, p. 86).  Appellate counsel filed an *Anders* brief, asserting that no good faith argument could be made that reversible error occurred in the trial court.  (Ex. B).  Petitioner was granted permission to file a *pro*

*se* brief, but declined to so do.  (Ex. D). The Florida First District Court of Appeal (First DCA) affirmed the judgment on July 13, 2011, per curiam and without a written opinion.  *Thomas v. State*, 65 So. 3d 1060 (Fla. 1st DCA 2011) (Table) (copy at Ex. E).

On September 15, 2011, petitioner filed a *pro se* motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. G).  The motion was summarily denied on September 27, 2011.  (Ex. H).

On June 14, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. I, pp. 24-45).  The state circuit court struck the motion as insufficiently pled, with leave to amend.  (*Id.*, pp. 46-47). Petitioner filed an amended Rule 3.850 motion on October 10, 2012.  (*Id.*, pp. 48-69).  The court appointed counsel to represent petitioner (*id.*, pp. 94, 97), conducted an evidentiary hearing (*id.*, pp. 98-138) and, following the hearing, denied relief in a written order (*id.*, pp. 141-184).  The First DCA affirmed on June 18, 2014, per curiam and without a written opinion.  *Thomas v. State*, 145 So. 3d 837 (Fla. 1st DCA 2014) (Table) (copy at Ex. M).  The mandate issued July 15, 2014.  (Ex. N).

Petitioner filed his federal habeas petition on September 17, 2014.  (Doc. 1). The petition asserts one ground for relief:  that trial counsel was ineffective because "counsel's deficient acts in conveying plea offers deprived defendant the opportunity

to accept a more favorable plea offer relayed by the prosecutor. . . ." (*Id.*). Respondent contends petitioner is not entitled to relief because the state courts' rejection of his claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts. (Doc. 15).

## LEGAL STANDARDS

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

>     (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>          (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>          (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.   *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).   As with the "unreasonable application" clause, the federal court applies an objective test.   *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.   28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If

this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

<u>Clearly Established Federal Law</u>

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S. Ct. at 1408. "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387. The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a formal prosecution plea offer before it lapsed); *Hill v. Lockhart*,

474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).   *Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'"   *Hill*, 474 U.S., at 57 (*quoting Strickland*, 466 U.S. at 688).   *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   Where the defendant's claim is based on ineffective advice that led to rejection of a formal plea offer, the prejudice prong requires the defendant to show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385.

"Surmounting *Strickland*'s high bar is never an easy task."   *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under §

2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

The advantages of entering a plea may only be secured "if dispositions by guilty [or no contest] plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  Recognizing that a prisoner more often than not "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea", courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony. *Id.*, 431 U.S. at 71.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted).

## PETITIONER'S CLAIM

Petitioner's sole claim asserts: "Petitioner was deprived his 6th Amendment Constitutional Right to effective assistance of counsel, whereby counsel's deficient acts in conveying plea offers deprived defendant the opportunity to accept a more favorable plea offer relayed by the prosecutor; thus a deprival of defendant's 14th Amend. Rights." (Doc. 1, p. 5). Respondent concedes that petitioner raised this claim as Ground One of his amended Rule 3.850 motion, and that the state courts adjudicated the claim on the merits. (Doc. 15, pp. 6-8 (citing Ex. I, pp. 53-59)). Respondent asserts that petitioner is not entitled to relief because he fails to satisfy § 2254(d). (Doc. 15, pp. 6-12).

Petitioner's claim was addressed at the state postconviction evidentiary hearing held July 23, 2013, at which petitioner, his former trial counsel (Assistant Public Defender Sarah Dyehouse) and the prosecutor (Assistant State Attorney Alvin Myers) testified. (Ex. I, pp. 98-138). No exhibits were admitted into evidence. The state courts denied petitioner's claim on the merits. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, explained:

**GROUND 1**

Defendant claims counsel was ineffective for failing to permit him to sign and accept a plea offer of 5 years. In his motion he alleges counsel visited him at jail with a plea agreement for 5 years in hand, which she showed to him but refused to let him sign. At the evidentiary hearing, Defendant was less clear about whether there was an actual written agreement for 5 years. According to his testimony, on counsel's first visit to the jail, he told her he did not want to fight the charges and asked her to get him as little time as possible. (Exhibit D, pp. 6-7.) On her third visit, counsel told him about the 5 year offer, which she had in her folder. (Exhibit D, p. 8.) Defendant was unable to specify whether he actually saw a written plea agreement at that time. (Exhibit D, pp. 8, 16.) He further testified he told her he wanted to sign the offer for 5 years, but she told him she was going to try to get it lower and left without letting him sign the offer. (Exhibit D, pp. 8-9.) Counsel returned about three weeks later with a video for him to see, and she told him about the 15 year cap offer. (Exhibit D, pp. 10-11.)

According to the state attorney involved with the case and plea negotiations, there is an indication a plea of an HFO year [sic] state prison sentence was contemplated, but there was no written offer. (Exhibit D, pp. 19-20.) However, he did not ultimately feel a 5 year sentence was appropriate in this case. (Exhibit D, pp. 20-23.) The straight-up plea with a 15 year cap was offered on November 3, 2009. (Exhibit D, p. 21.)

According to Defendant's former counsel, she met with Defendant initially on September 18, 2009, and again on October 27 and 30, 2009. (Exhibit D, pp. 25-26.) It was at this third meeting she played for him the video of the alleged drug buy. (Exhibit D, pp. 26, 28.) Her file reflects an entry dated October 29, 2009, of a verbal offer of 5 years as an HFO, which she must have discussed with the state attorney's office. (Exhibit D, pp. 27-28, 32-33.) She did not recall, nor did her notes reflect, she discussed the 5 year offer with Defendant on October 30. (Exhibit D, pp. 27, 35.) However, counsel did recall discussing the 5 year plea with Defendant at some point, and she was

certain in her recollection of him having refused the offer and being adamant he did not want a jail time offer but rather wanted her to argue for probation or community supervision. (Exhibit D, pp. 28-29, 36-37.) There was a time Defendant wanted to go [to] trial, denying it was him in the video. (Exhibit D, p. 38.) On January 5, 2010, Defendant initially rejected the 15 year cap offer. (Exhibit D, p. 31.) Counsel denied Defendant told her he was guilty and just wanted to get it over with. (Exhibit D, p. 38.) Had Defendant told her he wanted to take the 5 years plea offer, she would have let him take it. (Exhibit D, pp. 38-39.)

In addition to proving his allegations of counsel's deficient performance, Defendant must prove prejudice. The Florida Supreme Court has ruled

> to establish prejudice, the defendant must allege and prove a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Alcorn v. State*, — So. 3d —, 38 Fla. L. Weekly S397 (Fla. 2013). *See also Henry v. State*, 91 So. 3d 934 (Fla. 1st DCA 2012) (finding prejudice is shown where "but for the ineffective advice of counsel there is a reasonable probability that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances, and also that the court would have accepted its terms") (citing *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012)).

Defendant's testimony conflicts with that of his former counsel, and counsel's testimony is consistent with the facts and circumstances of the case and more credible. It is apparent there was a verbal 5 year HFO sentence offered, which counsel conveyed to defendant and he

rejected, expressing a desire to avoid prison time or to go to trial.  It is also apparent the State decided the offer was not appropriate, and defendant has failed to prove the State would not have withdrawn the offer.  *See* Fla. R. Crim. P. 3.172(g) (authorizing the prosecution to withdraw a plea offer at any time before it is formally accepted by the trial judge).  Defendant has therefore failed to prove deficiency of counsel or resulting prejudice.

(Ex. I, pp. 142-144).  The First DCA summarily affirmed.  (Ex. M).

The state court's factual findings are amply supported by the record and are presumed correct.  Petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations.  Petitioner also has not shown, by clear and convincing evidence, that any factual finding is incorrect.  *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) ("A state court's . . . determination of facts is unreasonable only if 'no fairminded jurist' could agree with the state court's determination. . . ."); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)); *see also* 28 U.S.C. § 2254(e) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Factual findings include credibility determinations.  The Eleventh Circuit has emphasized:

> Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983). We consider questions about the credibility and demeanor of a witness to be questions of fact. *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc). And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011*); see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while a reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (*citing Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination"))).

The state courts' rejection of petitioner's claim is not contrary to, or an unreasonable application of, clearly established federal law. The state circuit court found Prosecutor Myers' and PD Dyehouse's evidentiary hearing testimony credible, and petitioner's not credible. In addition to the state circuit court's accurate

description of the testimony in its written order, the postconviction evidentiary hearing transcript reveals the following additional details from Myers' and Dyehouse's testimony which clarify, and further support, the state courts' decision. Prosecutor Myers testified that he took over petitioner's file from his predecessor ASA Jeff Gaddy, and that they discussed what formal offer should be made.  (Ex. I, p. 117).  Gaddy suggested a 5-year sentence as an HFO, but Myers disagreed and felt a 5-year sentence was improper.  Myers' recollection was supported by his file, where he noted Gaddy's suggestion – "Per Jeff Gaddy, HFO, five years state prison" – and wrote an "X" through it.  (*Id.*, pp. 117, 119).  Gaddy's suggestion of five years state prison was never reduced to writing or formalized in any fashion.  (*Id.*, p. 117). Prosecutor Myers confirmed his recollection by checking the "Stack database" which is a database within the State Attorney's Office that logs events such as "every time a plea offer is made."  Prosecutor Myers testified that the only plea offer logged into the Stack database was the offer petitioner accepted – the straight-up plea with a 15-year cap as an HFO.  (*Id.*, pp. 117-118).  Prosecutor Myers was asked:  "So to your knowledge and your review of the file, there never was a written plea offer of a five years cap?"  (*Id.*, p. 118).  Myers responded:  "That's correct.  The only written plea offer made to Mr. Thomas was the plea offer that he signed."  (*Id.*, p. 119).   On cross-examination, Prosecutor Myers was asked:  "Would it be fair to say that that's

sometimes, a normal practice between defense counsel and prosecutor when you're attempting to reach a disposition, negotiated settlement that sometimes a prosecutor will perhaps throw a possible sentence out before writing it up in order to see if defense counsel or her client is interested in it?" (*Id.*, pp. 119-120).  Prosecutor Myers responded, "Yes, sir.  That's standard operating procedure." (*Id.*, p. 120).  On re-direct, however, Prosecutor Myers confirmed that Gaddy's proposed five-year offer was never formally made because Myers did not feel it was appropriate.  (*Id.*, p. 120).

Defense counsel Dyehouse testified that the only written plea offer made by the prosecution was the one petitioner signed.  (*Id.*, pp. 122-124).  PD Dyehouse had a notation in her file indicating that in late October of 2009, the prosecutor (she could not recall whether it was Gaddy or Myers) verbally communicated the possibility of a 5-year HFO sentence, and she discussed that as an option with petitioner even though she did not have a formal written offer to that effect.  (*Id.*, pp. 123-25).  Petitioner was adamant and "made it very clear" to counsel that he would not consider a "straight prison time offer" because he had just completed a 10-year prison sentence.  (*Id.*, pp. 125-26, 128).  Petitioner "absolutely did not want to go back to prison" (*id.*, p. 126) and "was adamantly, vehemently opposed to accepting straight prison time."  (*Id.*, p. 134).  Petitioner wanted an offer that allowed defense

counsel to "argue for probation or some kind of community supervision in lieu of any state time or jail time." (*Id.*, p. 126). Petitioner also proposed going to trial on the theory that he was not the man captured in the video of the drug buy. (*Id.*, p. 135). After this meeting, PD Dyehouse talked to Prosecutor Myers about Myers' "providing [her] and ultimately, Mr. Thomas with alternatives to sentence either a straight prison sentence or a cap so that [the defense] could argue for a downward departure". (*Id.*, p. 127). Prosecutor Myers informed Dyehouse that a five-year sentence was off the table. (*Id.*, pp. 127-128). When Dyehouse was asked at the postconviction evidentiary hearing, "Is it the characterization that you refused to let him sign a five-year plea agreement because you told him you could do better just false in your recollecting?" (*Id.*, p. 129). Dyehouse responded, "Absolutely false." (*Id.*).

In light of the state court's factual findings and the evidence before the state court, it was neither contrary to, nor an unreasonable application of Supreme Court precedent to find that (1) petitioner's allegation that counsel prevented him from signing a formal, written five-year plea offer was not true, and petitioner failed to meet his burden of establishing deficient performance under *Strickland*; and (2) petitioner failed to make the showing required by *Strickland* and *Lafler* to establish prejudice (*i.e.*, that there is a reasonable probability the proposed five-year plea offer

would have been presented to the court and accepted).  Petitioner is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Calvin Dudley Thomas*, Escambia County Circuit Court Case No. 09-CF-4011, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 18th day of May, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.